IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WINFRED WITHERSPOON          *
          Plaintiff,
   v.                           *   CIVIL ACTION NO. JFM-10-1832

R.N. ANGELA AFRICA, et al.   *
          Defendants.
                            ***

MEMORANDUM

I.    PROCEDURAL HISTORY

Winfred Witherspoon ("Witherspoon"), a former Maryland Division of Correction ("DOC") inmate, originally filed a complaint for damages in the Circuit Court for Baltimore City alleging that Nurse Angela Africa "neglected her duty and intentionally deprived" him of his "clearly established right to receive his prescribed medication…" while he was confined in the DOC at the North Branch Correctional Institution ("NBCI").[1] He accuses Africa of acting with deliberate indifference in denying him prescribed A & D Ointment for a one month period from April 15 to May 15, 2009 and Calcium+D from April to July, 2009. He claims his health declined as he experienced a rash and dry skin irritation and his "back bone" condition worsened.

On July 7, 2010, defendant Africa removed the Circuit Court case to this court. Seven days later she filed a motion to dismiss or, in the alternative, for summary judgment. Paper No. 9. Witherspoon sought and was granted two extensions of time to file an opposition. As of the within

---

[1] Correctional Medical Services, Inc. ("CMS") was also named as one of the "defendants" in the complaint caption, but no allegations were raised against CMS in the body of the complaint. The docket shall be amended to reflect CMS as a defendant. It does not appear, however, that service was ever effected on CMS and counsel's responsive pleading is only filed on behalf of defendant Africa. CMS is a corporate entity and cannot be held liable under 42 U.S.C. § 1983. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel*

signature date no response has been filed. The matter is ready for this court's consideration and may be decided without oral hearing. *See* Local Rule 105.6 (D. Md. 2010).

II.   STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Additionally, no genuine issue of material fact will be found if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III.   DISCUSSION

1.   Facts

Defendant Africa asserts, by submission of Dr. Colin Ottey's affidavit and Witherspoon's medical records, that a claim has not been properly stated under Fed. R. Civ. P. 6 and/or that constitutionally adequate medical care was provided. The following information has been furnished.

On November 19, 2008, a prescription for Vitamin A & D ointment was written for Witherspoon and was to remain in effect through June 10, 2009. Paper No. 9, Ex. A; Ex. B at pp. 2 & 26-27. At the end of March 2009, the Department of Public Safety and Correctional Services ("DPSCS") issued a directive prohibiting the use of creams and lotions at NBCI unless absolutely

---

*Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,*

medically necessary. Paper No. 9, Ex. A. As a result, Witherspoon's ointment was discontinued. *Id.* On April 1, April 3, and April 8, 2009, Witherspoon submitted sick-call encounter forms asking that his ointment be dispensed to him in a manner that would comply with the security measures. In response, he was examined by Physician's Assistant ("P.A.") Lisa Schindler, who found that while the ointment was an effective remedy for Witherspoon's dry, chapped skin, the medication was not absolutely medically necessary. *Id.*, A; Ex. B at pp. 3-6. According to P.A. Schindler, if Witherspoon had been diagnosed with diabetes or HIV, the ointment would be medically necessary because he would be immunocompromised. In the P.A.'s opinion, Witherspoon's condition of dry skin did not warrant the ointment. *Id.* On April 15, 2009, Schindler noted that the directive had been modified. Inmates were allowed to receive ointments and creams as long as they were not contained in large squirt-type bottles. Due to this rule change, Schindler reordered the ointment for Witherspoon. *Id.* Ex. A; Ex. B at p. 7. Witherspoon received the ointment on May 14, May 30, June 27, July 12, and August 1, 2009. *Id.* Ex. A; Ex. B at pp. 30-32, 34, 37, & 39.

Defendant notes that although Witherspoon was seen in May 2009, both in the NBCI Chronic Care Clinic and for a sick-call visit, he did not raise any complaints of a rash or worsened skin condition. Further, Dr. Ottey, the attending physician, did not observe any rash or abnormalities to the integrity of Witherspoon's skin. *Id.*, Ex. A; Ex. B at pp. 9-13.

Witherspoon was prescribed Calcium+D to treat his osteoporosis. *Id.*, Ex. A. Defendant Africa claims that even if Witherspoon did not receive this supplement from April through July 2009 as alleged, or there was a delay in his receipt of the medication, he would not have suffered any harm as the medication was prescribed to simply supplement the calcium and Vitamin D he was already receiving from his meals. Defendant states that in any event, she provided Witherspoon 60

---

316 Fed. Appx. 279, 282 (4th Cir. 2009). For these reasons the case against CMS shall be dismissed.

3

Calcium+D tablets on March 2, 2009, and Dr. Ottey renewed the prescription during a May 8, 2009 CCC evaluation. Paper No. 9, Ex. A; Ex. B at pp. 10-11 & 26-27. Ottey avers that Witherspoon did not voice a complaint about his receipt of the calcium supplement at that time or during a sick-call visit on May 29, 2009. *Id*., Ex. A; Ex. B at pp. 12-13.

On June 11, 2009, Witherspoon submitted a sick-call request asking for Calcium+D tablets. The following date a nurse notation was entered to inform Ottey of Witherspoon's request. Witherspoon was transferred to the Maryland Correctional Adjustment Center on July 14, 2009, and transferred back to NBCI shortly thereafter. He did not submit any further sick-call encounter forms or complain about the receipt of his Calcium+D tablets during his CCC and sick-call visits in June, July, August, September, or October of 2009. *Id*., Ex. A; Ex. B at pp. 14-25 & 40-41.

2. Analysis

Based upon the pleadings filed before the court, the undersigned concludes that no Eighth Amendment violation has been demonstrated. As an inmate claiming denial of medical care in violation of the Eighth Amendment, Witherspoon must prove two essential elements. First, he must satisfy the "objective" element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted). Witherspoon complains of dry skin and rashes and an unspecific "back bone" problem, which may or may not be a reference to his documented osteoporosis. These conditions, as alleged, do not comprise serious medical problems. Further, he must prove the second subjective component of the standard by showing deliberate

4

indifference on the part of Nurse Africa. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. In addition, to succeed on a § 1983 damage claim for violation of the Eighth Amendment, Witherspoon must show that he suffered a serious injury as a result of Africa's alleged conduct. *See Lawrence v. Virginia Dep't of Corrections*, 308 F.Supp.2d 709, 720 (E. D. Va. 2004). Simply put, alleged delays in providing adequate medical care do not rise to the level of deliberate indifference where the delays do not cause further injury. *Kane v. Hargis,* 987 F.2d 1005, 1009 (4th Cir. 1993).

The unrefuted documents presented to the court show that Witherspoon did not receive his Vitamin A & D ointment for his dry skin condition for a one-month period due to DPSCS security directives and the fact that the medication was not "absolutely medically necessary." When the DPSCS rule was modified, his ointment prescription was renewed. At no point during the period of time the ointment was withheld did Witherspoon complain of or exhibit rashes or a skin condition to healthcare providers. Further, Witherspoon offered no complaints to Africa regarding the failure to provide him the calcium supplement, nor does he show that he was injured by any delay in the receipt of the over-the-counter Vitamin A & D ointment or calcium supplement.

5

IV.	CONCLUSION

The undersigned finds that Witherspoon has failed to demonstrate a constitutional deprivation. A separate order effecting the rulings made in this opinion is entered herewith.


Date: October 25, 2010                        _____/s/_____
                                              J. Frederick Motz
                                              United States District Judge